UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GINA MADILL BROWN,

    Plaintiff,

v.

BANK OF NEW YORK MELLON, et al.,

    Defendants.

                                          /

File No. 1:10-CV-550

HON. ROBERT HOLMES BELL

## **O P I N I O N**

This matter comes before the Court on a motion for partial dismissal, or, in the alternative, for more definite statement, filed by Defendants Bank of New York Mellon, as Successor Trustee under Novastar Mortgage Funding Trust 2005-3, and Saxon Mortgage Services, Inc. (Dkt. No. 13.) For the reasons that follow, Defendants' motion will be granted in part and denied in part.

### I.

Plaintiff Gina Madill Brown filed this action against Defendants Bank of New York Mellon, Saxon Mortgage Services, Inc. ("Saxon"), and Mortgage Electronic Registration Systems, Inc. ("MERS") in the Eaton County Circuit Court. Plaintiff's twelve-count complaint, which arises out of Defendants' attempts to foreclose on her mortgage, includes claims of breach of contract, misrepresentation, defamation, conspiracy, violation of the Fair Credit Reporting Act, and violation of the Michigan Consumer Protection Act. (Dkt. No. 1,

Ex. 3, Compl.) The Eaton County Circuit Court entered a temporary restraining order enjoining Defendants from conducting a foreclosure sale of Plaintiff's property and enjoining them from negative credit reporting during the pendency of this action. (Dkt. No. 1, Ex. 1, State Court Docs.) Prior to the scheduled show cause hearing, Defendants removed the action to this Court on the basis of federal question jurisdiction. (Dkt. No. 1, Notice of Removal.) Defendants thereafter filed this motion for partial dismissal or, in the alternative, for more definite statement.

On stipulation of the parties, Defendant MERS has been dismissed from this action (Dkt. No. 17), and The Bank of New York Mellon, as Successor Trustee under Novastar Mortgage Funding Trust 2005-3 ("BoNY"), has been substituted for The Bank of New York Mellon (Dkt. No. 16).

**II.**

Defendants move for dismissal of Counts I, III, IV, V, VI, VII, VIII, and XII of Plaintiff's verified complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for an order directing Plaintiff to serve a more definite statement pursuant to Rule 12(e).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," but the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Hunter v. Sec'y of U.S. Army*, 565

F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plausibility standard is not a "probability requirement," but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

In reviewing a motion under Rule 12(b)(6), the Court may consider any document that is an exhibit to a pleading, Fed. R. Civ. P. 10(c), and any document that is referred to in the pleading and is central to the pleader's claim. *Weiner v. Klais and Co., Inc*., 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir. 1993)).

### III.

**A. Count I – Breach of Contract (Novastar Modification)**

Defendants move for dismissal of Count I, alleging breach of the 2007 Novastar modification, because the claim is barred by Plaintiff's execution of the 2008 contract modification. Plaintiff has not responded to this argument.

3

When Plaintiff and Saxon entered into the 2008 loan modification agreement, Plaintiff acknowledged the amount past due, both as to the unpaid principal balance as well as the stated balloon amount which was in arrears. (Compl. Ex. 3, ¶ 1.) In return, Saxon agreed to fix Plaintiff's interest rate at 6% for five years and agreed not to charge interest on the amount in arrears until 2035. (*Id.* at ¶¶ 1, 2.) Plaintiff agreed that she had no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument. (*Id.* at ¶ 4(c).)

On review, it appears that the 2008 contract modification supersedes the 2007 Novastar modification. Count I accordingly fails to state a claim on which relief can be granted.

## B. Count III – Breach of Contract (HAMP)

Defendants move for dismissal of Count III, alleging breach of contract (HAMP), because HAMP[1] does not provide for a private right of action. Furthermore, Defendants contend that Count III is subject to dismissal because Plaintiff was merely in a trial plan and

---

[1] HAMP is the acronym for the "Home Affordable Modification Program," a government program created pursuant to the October 3, 2008, Emergency Economic Stabilization Act, 12 U.S.C. § 5201 (2008). *Williams v. Geithner*, No. 09-1959, 2009 WL 3757380, at *2 (D. Minn. Nov. 9, 2009).

> HAMP is . . . designed to promote loan modification and other foreclosure prevention services. Under HAMP, individual loan servicers voluntarily enter into contracts with Fannie Mae, acting as the financial agent of the United States, to perform loan modification services in exchange for certain financial incentives. The servicer's obligations under HAMP are set forth in the HAMP Agreement, as well as in Program Guidelines established by the Department of the Treasury.

*Villa v. Wells Fargo Bank, N.A.*, No. 10CV81, 2010 WL 935680, at *1 (S.D. Cal. Mar. 15, 2010) (citations omitted).

4

her contract was not modified.

All of the district courts that have considered the issue have held that homeowners do not have a a private right of action under HAMP for denial of a loan modification. *See*, *e.g.*, *Cohn v. Bank of Am.*, No. 2:10-cv-865, 2011 WL 98840, at *7 (E.D. Cal. Jan. 12, 2011) ("District courts have persuasively concluded that there is no private right of action to enforce obligations under HAMP that exist between a loan servicer and the government."); *Ording v. BAC Home Loans Servicing, LP*, No. 10-10670, 2011 WL 99016, at *7 (D. Mass. Jan. 10, 2011) (agreeing with the defendant's argument that "HAMP does not provide a private cause of action under which borrowers may sue servicers."); *Adams v. U.S. Bank*, No. 10-10567, 2010 WL 2670702, at *4 (E.D. Mich. July 1, 2010) (citing cases).

Plaintiff responds that she was not attempting to allege a violation under HAMP. Instead, she contends that Count III is a breach of contract claim, and that she merely labeled it "Breach of Contract (HAMP)" to differentiate it from the breach of contract claims in Counts I and II. Plaintiff contends that the basis for the breach of contract claim in Count III is that she entered into an agreement with Defendants for a third loan modification, that Defendants suggested she apply for HAMP, and that after Defendants denied her a loan modification under HAMP, "Defendants were obligated to, but did not, explore other loan modification programs for Plaintiff." (Dkt. No. 19, Pl.'s Resp. 11-12.)

Plaintiff's argument does not track the allegations in her complaint. Plaintiff's complaint does not allege an agreement to enter into a third loan modification. The only

5

agreement Plaintiff alleges in Count III is the HAMP agreement: "Defendants entered into a contract with Plaintiff on July 31, 2009 by approving HAMP. See Exhibit 6." (Compl. ¶ 123.) Exhibit 6 is the "Home Affordable Modification Trial Period Plan." This agreement to enter into a trial period under HAMP provides in pertinent part:

> If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of the Plan and the Modification Agreement . . . , the Loan Documents will not be modified and this Plan will terminate.

(Compl., Ex. 6, ¶ 2(F).)

> I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until . . . (ii) I receive a fully executed copy of a Modification Agreement . . . .

(*Id.* at ¶ 2(G).)

The trial period plan agreement did not guarantee that Plaintiff's loan documents would be modified. Neither did it give rise to an obligation on the part of Defendants to explore other loan modification programs for Plaintiff. Because the only agreement Plaintiff has identified did not result in a loan modification or require Defendants to explore other loan modification programs, and because Plaintiff has not identified any other source of an obligation to explore other loan modification programs, Plaintiff has failed to state a breach of contract claim against Defendants in Count III.

**D. Counts IV and V – Misrepresentation**

Defendants move for dismissal of Count IV, alleging fraudulent misrepresentation, and Count V, alleging innocent misrepresentation, on the basis that Plaintiff has failed to

6

plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.

Rule 9(b) provides that in alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To comply with Rule 9(b), a plaintiff, at a minimum, must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (quoting *Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)). Although Rule 9(b) adds additional pleading requirements for allegations of fraud or mistake, "it should not be read to defeat the general policy of 'simplicity and flexibility' in pleadings contemplated by the Federal Rules." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503-04 (6th Cir. 2008) (citing *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 678 (6th Cir. 1988)). Rule 9(b) is to be interpreted in conjunction with Rule 8, which requires only "a short and plain statement of the claim" made by "simple, concise, and direct allegations." *Bledsoe*, 501 F.3d at 504 (citing *Michaels Bldg.*, 848 F.2d at 679). "When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct." *Id.* at 503. "So long as [a plaintiff] pleads sufficient detail – in terms of time, place and content, the nature of a defendant's fraudulent

scheme, and the injury resulting from the fraud – to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *SNAPP, Inc.*, 532 F.3d at 504.

To state a claim of fraudulent misrepresentation or common law fraud under Michigan law, a plaintiff is required to show that:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (quoting *Cummins v. Robinson Twp.*, 283 Mich. App. 677, 770 N.W.2d 421, 435 (2009)).

Defendants contend that Plaintiff has failed to plead fraud with particularity because she references representations made by "Defendants" and fails to specify which Defendant participated in the fraud. (*See* Compl. ¶¶ 135, 141.) Defendants also contend that the pleadings are deficient because Plaintiff has not alleged how she detrimentally relied upon the alleged misrepresentations or how Defendants benefitted from the misrepresentations.

Contrary to Defendants' assertions, Plaintiff did distinguish between the two defendants in the "Common Allegations" portion of her complaint. Plaintiff has alleged with specificity what representations were made, when they were made, and by whom they were made. (Compl. ¶¶ 8-99.) All of these paragraphs were incorporated by reference in Counts IV and V. In fact, it is the degree of particularity in Plaintiff's complaint, rather than the lack

8

of particularity, that makes Plaintiff's complaint difficult to sift through. Plaintiff contends her failure to distinguish between the Defendants in the body of each individual count is proper because BoNY appointed Saxon to service Plaintiff's loan, and BoNY is liable as principal for the acts of its agent Saxon. Defendants have not responded to the agency argument.

Defendants correctly note that Plaintiff has not indicated, with respect to each representation, whether it was true or false, and Plaintiff has not explicitly identified how she detrimentally relied on any particular statement. However, these matters can generally be discerned when Plaintiff's complaint is read as a whole. While Plaintiff's complaint is not a model of clarity, the Court is satisfied that the pleadings are sufficiently detailed to place Defendants on notice of her claims and to allow Defendants to prepare a responsive pleading. Further details can be developed in discovery. Accordingly, Defendants' motion to dismiss Counts IV and V will be denied.

**F. Count VI – Exemplary Damages**

Defendants move for dismissal of Count VI, alleging exemplary damages, because it does not state a claim on which relief can be granted. Plaintiff responds that she is claiming exemplary damages in connection with her intentional tort claims, that exemplary damages must be specifically pleaded to be recovered, and that it is common practice in Michigan to aver an exemplary damages claim in a separate count.

Federal rule of Civil Procedure 10(b) requires each claim founded on a separate

transaction or occurrence to be stated in a separate count. Exemplary damages are a form of relief or remedy, and not a separate claim or cause of action. Accordingly, Plaintiff's allegations in support of her claim for exemplary damages may stand, but the Court will not consider her request for exemplary damages as a separate count of the complaint.

### E. Count VII – Defamation

Defendants move for dismissal of Count VII, alleging defamation, because Plaintiff has failed to plead the elements of a defamation claim. Plaintiff has not responded to this argument.

The elements of a defamation claim under Michigan law are:

1) a false and defamatory statement concerning the plaintiff, 2) an unprivileged communication to a third party, 3) fault amounting to at least negligence on the part of the publisher, and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication.

*Rouch v. Enquirer & News of Battle Creek*, 487 N.W.2d 205, 211 (Mich. 1992) (citing *Locricchio v. Evening News Ass'n*, 438 Mich. 84, 115-116, 476 N.W.2d 112 (1991)). "Plaintiffs must plead precisely the statements about which they complain." *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 495 N.W.2d 392, 396 (Mich. Ct. App. 1992). Even where the plaintiff is asserting defamation by implication, the plaintiff is required "to set out the 'suggestive juxtapositions, turns of phrase, or incendiary headlines,' . . . that create the defamatory 'implication.'" *Id.*

In Count VII Plaintiff alleges that statements Defendants made to the credit reporting agencies were false. (Compl. ¶ 147.) The only other reference in the complaint to the

statements Defendants made to credit reporting agencies provides as follows:

> Plaintiff is informed and believes and thereon alleges that Defendants reported to the various credit reporting agencies (i.e., Equifax, Experian, and TransUnion) that Plaintiff was late on her mortgage payments. Plaintiff is further informed and believes and thereon alleges that Defendants, at all times relevant herein, continued to illegally report Plaintiff as being late on her loan.

(Compl. ¶ 99.)

Plaintiff does not allege when Defendants made the statement to the credit reporting agencies, nor does she allege which payments were reported as late. Such specificity is of particular importance in this case because Plaintiff has acknowledged in her pleadings that some of her payments were made late. (*See, e.g.*, Compl. ¶ 21.) Plaintiff's allegations do not satisfy the requirement of specificity, and Plaintiff has not sought an opportunity to amend her complaint to add additional detail. Accordingly, the Court will grant Defendants' motion to dismiss Count VII.

**G. Count VIII – Intentional Infliction of Emotional Distress**

Defendants move for dismissal of Count VIII, alleging intentional infliction of emotional distress, based upon their contention that there can be no claim for intentional infliction of emotional distress in a contractual setting.

In order to maintain a cause of action for intentional infliction of emotional distress under Michigan law, a plaintiff must establish four elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 908 (Mich. 1985); *Dalley v. Dykema Gossett*, 788

N.W.2d 679, 694 (Mich. Ct. App. 2010). An intentional infliction of emotional distress claim will rarely survive in the contractual setting because a tort action for intentional infliction of emotional distress must rest on a breach of duty distinct from contract. *Roberts*, 374 N.W.2d at 909; *see also Hayley v. Allstate Ins. Co.*, 686 N.W.2d 273, 277 (Mich. Ct. App. 2004) ("The failure to pay a contractual obligation or insurance benefits does not amount to outrageous conduct, even if it is done in bad faith or wilfully.")

Defendants contend that Plaintiff has alleged nothing more than that Defendants refused to perform their obligations under the various loan modifications, and that she has therefore alleged no breach of duty distinct form the various contracts. Plaintiff responds that she has not merely alleged that Defendants foreclosed on her property, but that they engaged in a deliberate pattern of harassing her by repeatedly and wrongfully refusing to follow the terms of her loan modifications and for foreclosing her mortgage. (Pl.'s Resp. 23.)

In *Atkinson v. Farley*, 431 N.W.2d 95 (Mich. Ct. App. 1988), the court acknowledged that an insurer's wrongful, bad faith termination of benefits, by itself, is not sufficiently outrageous to support a claim for intentional infliction of emotional distress. *Id.* at 97. The court nevertheless held that because the plaintiff had alleged facts indicating that the defendants abused their control of the plaintiff's income in order to harass and intimidate him to gain economic benefit for the insurance company, the plaintiff had stated a claim for intentional infliction of emotional distress. *Id.*

Claims based on actions taken to foreclose on a mortgage, like other claims based on contract, generally do not rise to the level of extreme and outrageous conduct. *See Robbins v. Mortg. Elec. Registration Sys., Inc.*, No. 1:09-CV-295, 2009 WL 3757443, at *8 (W.D. Mich. Nov. 9, 2009); *Ursery v. Option One Mortg. Corp.*, No. 271560, 2007 WL 2192657, at *16 (Mich. App. July 31, 2007) (affirming summary disposition on claim that the bank committed intentional infliction of emotional distress through its predatory schemes involving threats, fraud, and harassment.). However, the general rule does not rule out an intentional infliction of emotional distress claim in an appropriate case. In this case Plaintiff has alleged facts to show that Defendants were in a position of control over her home, that they repeatedly gave her false and misleading information about her obligations and status under the mortgage, that they failed to communicate with her, and that they wrongfully attempted to foreclose on her home three times, including once within days of working out a loan modification agreement. Construing the complaint in the light most favorable to Plaintiff, the Court cannot say that Plaintiff's intentional infliction of emotional distress claim has no plausibility. Further factual development will be required to determine whether this is the rare case where actions taken to foreclose on a mortgage rise to the level of extreme and outrageous conduct.

## C. Count XII - Michigan Consumer Protection Act

Defendants move for dismissal of Count XII, alleging violations of the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.903(1), on the basis that the MCPA does not apply to them. Plaintiff has not responded to this argument.

13

The MCPA exempts from liability a "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(1)(a). For purposes of this exemption, the relevant inquiry is "whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28, 38 (Mich. 1999).

There is no dispute, and the Court can take judicial notice that, Defendant BoNY is a licensed mortgage lender and that Defendant Saxon is a licensed mortgage servicer. BoNY is a member of the Federal Reserve, and is regulated by the Federal Reserve Board. Saxon is licensed by the State of Michigan as a First Mortgage Registrant pursuant to the Mortgage Brokers, Lenders, and Servicers Licensing Act, Mich. Comp. Laws. § 445.1651 *et seq*. Plaintiff alleges in her complaint that Defendants BoNY and Saxon were engaged in mortgage loan origination and servicing of mortgage loans. This conduct involves activities specifically authorized by the laws under which Defendants were regulated. Accordingly, Defendants are exempt under the MCPA. *See Hanning v. Homecomings Fin. Networks, Inc.*, 436 F. Supp.2d 865, 869 (W.D. Mich. 2006) (dismissing MCPA claims because the defendants were licensed mortgage lenders, and their general conduct was mortgage lending, which was specifically authorized by law). Plaintiff has failed to state a claim under the MCPA on which relief can be granted. Accordingly, the Court will grant Defendants' motion to dismiss Count XII.

## IV.

For the reasons stated herein, Defendants' motion for partial dismissal will be granted in part and denied in part. The motion will be granted as to Counts I, III, VI, VII, and XII, and denied as to Counts IV, V, and VIII.

An order consistent with this opinion will be entered.


Dated: January 21, 2011 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE